# Florence M. Buck, Exrx., Plff. in Err., *v.* Charles R. Henderson et Ux.

Declarations when receiving money, or afterward, clearly evincing an intent to take it in trust at the time of its reduction into possession, repel the presumption of personal acquisition and fix a trust upon the fund.

Where the guardian of the estate, descended to a minor daughter from

NOTE.—The same principle is recognized and the trust sustained in Smith's Estate, 144 Pa. 428, 27 Am. St. Rep. 641, 22 Atl. 916; Gaffney's Estate, 146 Pa. 49, 23 Atl. 163; Gilmor's Estate, 158 Pa. 186, 27 Atl. 845.

her mother, pays over the accumulated income to her father who is entitled to it as tenant by the courtesy, and the father, upon receiving it and often afterward until his death, declares to the guardian and others that the money is the daughter's, his declarations are competent to prove an executed gift of the money to the daughter, in an action of assumpsit brought by her after attaining her majority to recover it from his executrix.

(Decided October 4, 1886.)

Error to the Common Pleas of Warren County to review a judgment on a verdict for the plaintiffs in an action of assumpsit. Affirmed.

This was an action of assumpsit by Charles R. Henderson and Anna M., his wife, in right of the wife, against Florence M. Buck, executrix of E. E. James.

At the trial before BROWN, P. J., the following facts appeared:

Susanna E. James died in 1860, intestate, leaving one child, the plaintiff Anna, then a minor, and a husband, E. E. James, the defendant's testator. The real estate which Mrs. James owned at her death was sold by order of court. The proceeds were given to the guardian of the plaintiff Anna and were by him invested, in 1865. Before investing the money he went to Mr. James and asked him if he thought government bonds a safe investment. According to the guardian's testimony Mr. James said: "He did not care what I put it into; he was not going to have anything to do with it; that he never would touch the money; it was for Anna. He said he had plenty to live on himself and he did not care for it; that it was Anna's money. I might do what I pleased with it." He never thereafter claimed an interest in the money, nor did he exercise any control over it while it remained in the hands of the guardian. He nearly always stopped to see the guardian when in the neighborhood and asked how he was getting along with Anna's money.

The guardian offered the interest of the money to Mr. James twice, but he said he would not take it, that it was Anna's money. The interest accumulated until 1879 when Mr. James wrote to the guardian as follows:

"My Dear Sir: Your favor received. While I was much pleased to hear from you and my old Honeybrook friends, you did not give me a definite answer to my inquiry as to how much money was due Anna. I had hoped (and having unlimited confidence in your honor and integrity) that you would annually apply interest to principal, thus compounding the interest. This was, perhaps, asking too much, and there may have been times when there may have been difficulties in getting 6 per cent. I would say of this accumulated interest, I could invest all or a part for Anna, with good and safe security, to realize 10 per cent, either on the first of April or May. Please give me a definite and full statement of the account, and whether I may secure an investment for all or part of said interest."

In pursuance of this letter the guardian turned over to Mr. James the whole of the accumulations—according to his testimony—to invest for Anna.

Afterward, in July, 1879, Mr. James visited his daughter at her uncle's and said the guardian did not appear to want to put her money out, and he did not want it to lie idle. At the time of this visit he told neighbors that he had given the money to Anna, and it was at the same visit he told his brother that he would invest this money for Anna; that he could get 10 or 12 per cent interest for her, and after receiving the last of the money he wrote to his brother: "I have nearly $2,000 of Anna's money that I got from Morton (the guardian) last August." This was one month before his death in January, 1880.

In 1881 the plaintiff Anna became of age, received the principal from her guardian, gave him a release, and brought this suit against her father's executrix to recover the accumulation of interest, on the ground that he had given it to her.

The court charged, *inter alia,* as follows:

"In order to make a valid gift it must go into immediate effect. There must not only be the purpose and intention to give, but that intention must be carried into effect by Mr. James in his lifetime parting with all dominion and control over the subject matter, and vesting the same in his daughter, the alleged donee. It makes no difference how strong or how fixed was the purpose of Mr. James to give this money to his daughter at some

future time, or how many times he had declared to third persons he had so given it, provided you find, from all the evidence, that there never was a time in his life when he did actually consummate the gift by surrendering all dominion and control over the money. You come to that single question of fact, which you are to determine from the whole evidence, and upon which we can throw no particular light. . . .

"[It is for you to take all the evidence and say whether there was a time, in the lifetime of Mr. James, when he consummated a gift of this money to his daughter, parted absolutely with all control and dominion over it, with intention to vest the dominion and control, as against himself, absolutely in his daughter. If there was, then his estate ought to respond, and you ought to give a verdict for the amount claimed with the interest.] If there was not, then your verdict ought to be in favor of the defendant."

Verdict and judgment were for the plaintiff; whereupon, the defendant took this writ, assigning as error: The part of the charge included in brackets; the refusal of the court to give binding instructions for the defendant, and the refusal of the court to charge that the release of the plaintiff Anna to her guardian was, in the absence of fraud, accident, or mistake, a bar to the action.

*D. I. Ball* and *C. C. Thompson,* for plaintiff in error.—There is in the case no sufficient evidence of an executed gift.

A gift is not executed so long as the donor retains any control over it. Withers v. Weaver, 10 Pa. 391; Linsenbigler v. Gourley, 56 Pa. 166, 94 Am. Dec. 51; Pringle v. Pringle, 59 Pa. 281; Fross's Appeal, 105 Pa. 267.

The declarations to establish a husband's disclaimer of his wife's chattels must "be deliberate, positive, precise, clear, and consistent with each other; not inconsiderate, vague, or discrepant." *Re* Gray, 1 Pa. St. 329.

In Madeira's Appeal, 17 W. N. C. 202, 2 Cent. Rep. 313, 4 Atl. 908, it is said: "The legal requisition is that the intention of the donor be established by clear and precise evidence, and that the delivery be *secundum subjectam materiam.*"

See also Herr's Appeal, 5 Watts & S. 494; Fross's Appeal, 105 Pa. 258; Bond v. Bunting, 78 Pa. 210; Scott v. Lauman, 104 Pa. 593; Williams's Appeal, 15 W. N. C. 89.

Mr. James could not give his estate in the money in the guardian's hands except by a writing. The act of April 18, 1853, Purdon's Digest, p. 1460, § 7, makes the proceeds of the sale of the real estate by the trustee real estate. Holmes's Appeal, 53 Pa. 339.

There must be a consideration besides love and affection to support a trust. Trough's Estate, 75 Pa. 118.

Equity carries the doctrine of *nudum pactum* farther than even the law does. Dennison v. Goehring, 7 Pa. 178, 47 Am. Dec. 505.

Where there has been no deceit or unfair practice, and the party may with a good conscience retain the money, he cannot in an action of assumpsit on the common counts be compelled to pay it back, even where he could not at law have recovered it originally. Deysher v. Triebel, 64 Pa. 386; Irvine v. Hanlin, 10 Serg. & R. 219; Mann's Appeal, 1 Pa. St. 29; Hinkle v. Eichelberger, 2 Pa. St. 484.

*A. E. Sisson* and *Johnson, Lindsey & Parmlee,* for defendants in error.—It is not a question whether the father might not have adopted some other mode of renouncing all dominion and control which would have furnished better evidence against himself, but whether all these circumstances are not sufficient to go to the jury and to justify their verdict.

But suppose the jury did not find that the sum of all these circumstances, acts, and declarations, quite fulfilled the requirements of the law. They at least had the right to them as lights, by the aid of which they could examine subsequent acts of the father, all in the same general line, to see whether, as thus illuminated, the evidence satisfied them that he afterwards made another and more successful effort to give to his daughter the fruit of her mother's estate. Madeira's Appeal, 17 W. N. C. 202, 2 Cent. Rep. 313, 4 Atl. 908.

Our evidence was sufficient to go to the jury, even had we not shown that the donor and donee were together. Grangiac v. Arden, 10 Johns. 293.

To make a valid gift *inter vivos* there must be a delivery with the intention of making a gift, but no form of words is necessary to be observed at the time to constitute a good gift. If the circumstances clearly evince the intention it is sufficient; and if these are equivocal, an explicit declaration afterward of that intention is competent. Minchin v. Merrill, 2 Edw. Ch. 333; Doty v. Willson, 47 N. Y. 580; Trow v. Shannon, 78 N. Y. 446.

Declarations of the husband when receiving the wife's money or choses in action, or afterwards, clearly evincive of his intent at the reduction into possession, are sufficient to repel the presumption of personal acquisitions and establish the relation of trustee for the wife. Moyer's Appeal, 77 Pa. 482; Malone's Estate, 37 Phila. Leg. Int. 63, 38 Phila. Leg. Int. 303. See Hackney v. Vrooman, 62 Barb. 666; *Re* Gray, 1 Pa. St. 327; Wesco's Appeal, 52 Pa. 195.

It is not necessary that witnesses shall have seen actual delivery take place. The bond or the note or the policy may have been, at the time, already in the custody of the donee; and in such case, words indicating that the donor renounced all ownership would undoubtedly be sufficient. Malone's Estate, 37 Phila. Leg. Int. 63; 38 Phila. Leg. Int. 303; Wing v. Merchant, 57 Me. 387.

So, as was said by Lord ROMILLY, in Morgan v. Malleson, L. R. 10 Eq. 475, cited by Judge HARE, in Bond v. Bunting, 78 Pa. 210: "If the donor had said, 'I undertake to hold the bond for you,' that would have been a declaration of trust, though there had been no delivery." See also Helfenstein's Estate, 77 Pa. 331, 18 Am. Rep. 449.

The delivery may be proved by the declarations of the donor, just as the gift itself may be; and when the donor declares that he had given at a previous time, and that the donee had then become the owner, it is implied that the delivery, and indeed every other formality necessary to create a complete gift, had taken place. The law always presumes knowledge of its requirements. Malone's Appeal, 38 Phila. Leg. Int. 303.

PER CURIAM:
We discover no error in this record. Declarations accom-

panied with acts clearly proving the intent of the donor to execute the gift were given in evidence. The dealings of the donor with the guardian of the ward were tantamount to dealing directly with the ward. Declarations, when receiving the money or afterwards, clearly evincing an intent to take it in trust, at the time of its reduction into his possession, are sufficient to repel the presumption of personal acquisition and stamp the relation of trustee upon him.

Judgment affirmed.